Fleet Natl. Bank v Impol Seval Aluminum Rolling Mill Inc. (2021 NY Slip Op 01943)





Fleet Natl. Bank v Impol Seval Aluminum Rolling Mill Inc.


2021 NY Slip Op 01943


Decided on March 30, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 30, 2021

Before: Gische, J.P., Kern, Moulton, Shulman, JJ.


Index No. 602593/03 Appeal No. 12952 Case No. 2019-04119 

[*1]Fleet National Bank, Plaintiff,
v
Impol Seval Aluminum Rolling Mill Inc. et al., Defendants, Sevojno Copper & Brass Mills, Defendant-Appellant. Beogradska Banka A.D., NonParty Respondent.


Seward & Kissel, LLP, New York (Brian P. Maloney of counsel), for appellant.
Marion & Allen, P.C., New York (Roger K. Marion of counsel), for respondent.



Order and judgment, Supreme Court, New York County (James E. d'Auguste, J.), entered June 13, 2019, which, upon finding that defendant Beogradska Banka A.D. in Bankruptcy s/h/a Beogradska Banka had a superior claim to the funds at issue, granted its cross motion and denied defendant Sevojno Copper & Brass Mill's (SCBM) motion seeking disbursement of said funds, and directed the New York State Office of the State Comptroller, Office of Unclaimed Funds to pay $2,470,711.50 to defendant Beogradska Banka A.D. in Bankruptcy s/h/a Beogradska Banka, unanimously reversed, on the law, without costs, the order and judgment vacated, the cross motion denied, and the matter remanded for further proceedings consistent herewith.
Fleet National Bank (Fleet) commenced this interpleader action in August 2003 to determine the ownership of funds deposited by Sevogno Overseas Corp. (SOC) with Fleet's predecessor Summit Bank. The funds were frozen in 1992 as a result of United States sanctions against the former Federal Republic of Yugoslavia. After the sanctions were lifted in December 2002 a dispute arose regarding disbursement of the funds. Fleet deposited the funds into court in 2003. In 2013 the funds were transferred to the New York State Office of the State Comptroller, Office of Unclaimed Funds.
Three defendants claim entitlement to the funds: SCBM also known in Serbian as Valjaonica Bakra Sevojno; Impol Seval Aluminum Rolling Mill Inc. (Impol Seval); and Beogradska Banka (Beogradska), a bank owned by the former government of Yugoslavia. SCBM, the owner of a 66.6% interest in SOC, claims entitlement to 66.6% of the funds as SOC's successor-in-interest. Impol Seval, the owner of a 33.3% interest in SOC, claims entitlement to 33.3% of the funds as SOC's successor-in-interest. Beogradska claims entitlement to all of the funds as the judgment creditor of SOC pursuant to a June 1997 default judgment issued by the United States District Court for the Southern District of New York (the 1997 default judgment). In September 2001 Beogradska served Fleet with a restraining notice based on the 1997 default judgment.
SCBM and Impol Seval answered the interpleader complaint in September 2003. Beogradska never answered the complaint. It appeared for the first time in August 2018 by cross motion seeking disbursement of the funds to it in response to SCBM's order to show cause seeking the funds. Supreme Court denied SCBM's order to show cause and granted Beogradska's cross motion, finding that Beogradska was entitled to the funds. Judgment was entered in favor of Beogradska and SCBM appealed.
We now reverse and vacate the judgment. Supreme Court correctly denied SCBM's order to show cause. However, it erred in granting Beogradska's cross motion because issues of fact exist as to Beogradska's entitlement to the funds.
The Privatization
According to the affidavit from SCBM's Chief Executive Officer Milija Bozovic, submitted in connection with SCBM's order to show cause[*2], Beogradska sued SCBM and SOC in 1995 in Belgrade (then part of the former Yugoslavia). He also noted that Beogradska obtained the 1997 default judgment against SOC two years later. Bozovic explained that the 1995 action was stayed in 2001 after Beogradska filed for bankruptcy in Belgrade. He further averred that SCBM and Beogradska eventually resolved their disputes in the bankruptcy court through SCBM's privatization and the deposit of the sale proceeds in the National Treasury of Yugoslavia.
In connection with the privatization, SCBM and Beogradska executed two governing documents: the "Protocol on Reconciled Balance of Debtor's Liabilities to the Creditor, dated October 10, 2003" (the Protocol) and the "Contract on Settlement of Receivables dated November 20, 2003" (the Settlement). Both documents were translated from Serbian to English.
The Protocol defines the "Debtor" as "Valjaonica bakra d.p. Sevojno" (SCBM) and the "Creditor" as "Beogradska banka a.d." SCBM and Beogradska signed the document but SOC was not a signatory. The Protocol refers to the "manner and conditions for settling the obligations of certain legal entities towards banks in bankruptcy." In the Protocol, SCBM and Beogradska agreed that the total amount of "Debtors obligations to the Creditor" as of June 27, 2003 was $14,200,462.30. The Protocol refers to debt owed under various credit lines and overdrafts. It refers to "The judgment of the competent US court (United States Desict [sic] Court Southern District of New York) of July 17, 1997" under the heading for credit line KKL 603438. It also refers to "The judgment of the competent US court (United States District Court Southern District of New York) of July 17, 1997" under the heading for credit line KKL 603437.
The Settlement similarly defines the "Debtor" as "Valjaonica bakra d.p. Sevojno" (SCBM) and "Beogradska banka a.d." as the "Creditor." SCBM and Beogradska signed the document but SOC was not a signatory. Article 1 provides in relevant part that "[t]he Protocol . . . shall constitute an integral part of this Agreement." It refers to the agreed-upon liabilities contained in the Protocol (including the 1997 default judgment and SOC's credit lines). Article 2 refers to an agreement to settle those obligations for a payment of 3 million euros.
Article 3 provides in relevant part:
"It shall be deemed that the Debtor has fully settled the Creditor's
claim from Article 1 of the Agreement when the funds
generated from the sale of the Debtor's socially owned capital
referred to in Article 2 of the Agreement are transferred by the
Privatization Agency of the Republic of Serbia to the payment
account of the budget of the Republic of Serbia."
Article 4 provides in relevant part:
"All joint and several debtors under the obligations that are the subject of this Agreement shall remain liable to the Creditor. The Creditor shall reduce their total liability (obligation) by the amount paid in accordance with this [*3]Agreement."
Discussion
Preliminarily, we reject SCBM's argument that it has demonstrated that it is SOC'S successor-in-interest based on the uncontroverted Bozovic affidavit and the affidavit of the Chairman of SCBM's Supervisory Board. Black's Law Dictionary defines a corporate successor as "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation" (Black's Law Dictionary 1732 [11th ed 2019]; see also ETF Intl. Assoc., Inc. v American Stock Exch. LLC, 87 AD3d 464, 464 [1st Dept 2011] [a corporate successor-in-interest exists for "one who takes over the obligations or rights of another"]). Other than invoking an ownership interest in SOC, SCBM never explains the basis for its assertion that it is SOC's successor. SCBM's citation to JP Morgan Chase Bank, N.A. v Shapiro (104 AD3d 411, 412 [1st Dept 2013]) is unavailing. There, the plaintiff was indeed the successor-in-interest to Washington Mutual Bank, FA because in September 2008 JPMorgan Chase acquired the assets and certain liabilities of Washington Mutual's banking operations (see JP Morgan Chase Bank N.A. v Miodownik, 91 AD3d 546, 547 [1st Dept 2012]). Thus, an issue of fact exists as to SCBM's entitlement to the funds as a successor, a shareholder, or on any other basis.
We also reject SCBM's argument that Beogradska is, as a matter of law, time-barred from collecting the 1997 default judgment because 20 years has passed from the issuance of the 1997 default judgment and in view of the presumption of payment under CPLR 211 (b). Rather, an issue of fact exists as to whether the references to the 1997 default judgment in the Protocol, which appear below the heading for credit lines KKL 603438 and 603437, constitute an acknowledgment of the debt sufficient to permit enforcement of the 1997 default judgment (see First N.Y. Bank for Bus. v Alexander, 106 AD3d 138, 139-141 [1st Dept 2013] [debtor's 2005 listing of a judgment within his bankruptcy petition constituted an acknowledgment of debt sufficient to permit enforcement of a judgment more than 20 years after issuance of the judgment]).
That SOC did not acknowledge the debt itself does not negate the possibility that SCBM acknowledged the debt on SOC's behalf. Indeed, in his affidavit Nikitovic avers that the Protocol "reflects SOC's agreement with Beogradska Banka to set forth a protocol to reconcile the balance and obligations owed by SOC (which was then the subject of privatization) to Beogradska Banka's bankruptcy estate." Symbax, Inc. v Bingaman (219 AD2d 552 [1st Dept 1995]) does not compel a different result. There we found that it was error for the trial court to adopt the plaintiff's successor liability claim to hold one corporation liable on a promissory note that was made by another corporation (id. at 552-553). Here, Beogradska's argument is not based on successor liability. Rather, it is based on the express references in the [*4]Protocol to the 1997 default judgment.
Finally, we reject SCBM's argument that the 1997 default judgment was satisfied by the Settlement based on the terms in Article 3 of the Settlement. SCBM acknowledges that if we cannot find in its favor as a matter of law the proper course of action is to remand on that issue. We cannot decide the issue as a matter of law because SCBM's argument overlooks the language in Article 4. Article 4 provides in relevant part that "[a]ll joint and several debtors under the obligations that are the subject of this Agreement shall remain liable to the Creditor. The Creditor shall reduce their total liability (obligation) by the amount paid in accordance with this Agreement." The Settlement does not identify the joint and several debtors that are the subject of the agreement. Both the Bozovic and Nikitovic affidavits indicate that the Settlement was intended to resolve SOC's obligations. Thus, an issue of fact is raised as to whether SOC is one of the joint and several debtors referred to in Article 4 and concomitantly, whether SOC's debt was satisfied by the Settlement.
Contrary to Beogradska's argument, SCBM has not waived its arguments that: 1) Beogradska's claim is time-barred, and 2) the 1997 default judgment was satisfied by the Settlement. CPLR 3211(e) is inapplicable here. CPLR 3211(e) provides, among other things, that "a party may move on one or more of the grounds set forth in subdivision (a)" and that "[a]ny objection or defense based upon a ground set forth in paragraphs one, three, four, five and six of subdivision (a) is waived unless raised either by such motion or in the responsive pleading." However, CPLR 3211(a) enables a party to move to dismiss "one or more causes of action asserted against him" based on one or more of the enumerated grounds, including statute of limitations and payment. Fleet is a mere stakeholder seeking to determine the rightful owner of the funds. As such, it asserted no cause of action against SCBM that SCBM could have moved to dismiss. Once Beogradska appeared by cross motion and asserted its claim to the funds, SCBM raised its arguments in a timely fashion.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 30, 2021